USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __6/27/24__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MaidPro Franchise, LLC,

                Plaintiff,

- against -

City Maid Pro, Inc.,

                Defendant.

**23 Civ. 9172 (VM)**

**DECISION AND ORDER**

---

**VICTOR MARRERO, United States District Judge.**

Currently before the Court in this trademark infringement action is a motion for a default judgment filed by plaintiff MaidPro Franchise, LLC ("MaidPro"). (See Dkt. Nos. 14-15.) For the reasons below, the Court holds that MaidPro has established the defendant's liability and is entitled to a permanent injunction and $10,000 in statutory damages. However, as further discussed below, the Court also finds that MaidPro has not fully complied with the procedural requirements applicable to a motion for a default judgment. Accordingly, MaidPro is directed to comply with those requirements, at which point it may move by letter motion for the relief described herein.

## I. BACKGROUND

MaidPro filed this action on October 18, 2023 against defendant City Maid Pro, Inc. ("CMP"), alleging violations of

federal and Massachusetts trademark law. (See Compl., Dkt. No. 1.) CMP was served via the New York Secretary of State on October 25, 2023. (See Dkt. No. 9.) CMP never filed a responsive pleading. MaidPro requested an entry of default against CMP on December 6, 2023, and the Clerk of Court entered default the same day. (See Dkt. Nos. 11–13.) Accordingly, CMP has defaulted and is deemed to have admitted the following allegations, which the Court takes from the complaint and assumes are true. See Salvatore Ferragamo S.p.A. v. Does 1-56, No. 18 Civ. 12069, 2020 WL 774237, at *1 (S.D.N.Y. Feb. 18, 2020).

MaidPro is a Delaware limited liability company with an address in Boston, Massachusetts. MaidPro franchises third parties to own and operate MAIDPRO house cleaning and maid services. More than 250 businesses in North America operate within the MAIDPRO franchise. MaidPro conducts business on the Internet through its website, www.maidpro.com, and through various social media sites.

MaidPro is the exclusive owner of all proprietary and property rights and interests in and to the MAIDPRO franchise system, including two U.S. trademark registrations for the MAIDPRO mark.[1] The Commonwealth of Massachusetts also granted

---

[1] The complaint alternates between referring to a single "mark" and plural "marks," but as the Court reads the complaint, only one mark belonging to MaidPro — the MAIDPRO mark — is relevant to this action. The two separate

2

trademark registration for the MAIDPRO mark. MaidPro has the exclusive right to use the trademark in connection with the operation of house cleaning businesses.

Consumers recognize the MAIDPRO mark as signifying direct affiliation with MaidPro. This recognition is the result of MaidPro expending considerable resources and effort to promote the MAIDPRO franchise system in connection with the MAIDPRO mark, which has become distinctive. MaidPro has acquired goodwill associated with the MAIDPRO mark among the public. In turn, the mark has acquired secondary meaning.

CMP was formed in New York and offers house cleaning and maid services in New York City. CMP offers the same types of services as MaidPro and used the dominant elements of the mark owned exclusively by MaidPro. CMP conducts business on the Internet through its website www.citymaidpro.com, whose domain name it registered in 2020 in willful disregard of MaidPro's rights, and through other sites such as Yelp and Groupon. CMP uses the name "City Maid Pro" in all its public-facing documents and through the business's email address, CityMaidPro@gmail.com. MaidPro did not authorize CMP to use the MAIDPRO mark.

---

U.S. trademark registrations for the mark appear to cover, respectively, the word MAIDPRO and the design of the MAIDPRO logo, but there is no relevant allegation against CMP that implicates the logo design.

MaidPro sent three letters to CMP, demanding that CMP cease all use of the MAIDPRO mark, in May, June, and August of 2023. CMP nevertheless continued to use the infringing mark or name after the letters were sent and caused consumers to mistakenly assume there is a relationship between MaidPro and CMP.

## II. LEGAL STANDARD

MaidPro moved for default judgment March 7, 2024. (See Dkt. No. 14 [hereinafter the "Motion" or "Mot."]; see also Dkt. No. 15 (declaration submitted in support of Motion).) A litigant has defaulted when he or she has failed to plead or otherwise defend against a claim for relief. See Fed. R. Civ. P. 55(a); Ferragamo, 2020 WL 774237, at *1. Upon a party's default, a court is required to accept the well pleaded factual allegations of the non-defaulting party as true and draw all reasonable inferences in its favor. See Ferragamo, 2020 WL 774237, at *1. The Court nonetheless remains obligated to determine whether the allegations establish liability as a matter of law. See id.

## III. DISCUSSION

MaidPro brings seven claims for relief, three of which (Counts One, Three, and Four) are asserted pursuant to the Lanham Act, see 15 U.S.C. §§ 1051–1127. (See Compl. ¶¶ 35–

4

37, 41-49.) The other four claims (Counts Two, Five, Six, and Seven) are brought under Massachusetts law. (See id. ¶¶ 38-40, 50-60.)

MaidPro seeks a permanent injunction for the violations asserted in Counts Three and Four (see Mot. ¶¶ 7-8) and statutory damages of $20,000 for the violation alleged in Count Four (see id. ¶ 9). Further, MaidPro seeks attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) and 28 U.S.C. § 1920 and post-judgment interest pursuant to 28 U.S.C. § 1961. (See id. ¶¶ 10-14.)

A.   LIABILITY

Counts One and Two allege trademark infringement in violation of, respectively, the Lanham Act[2] and Mass. Gen. Laws ch. 110H, § 12. Count Three alleges false designation of origin in violation of the Lanham Act. See 15 U.S.C. § 1125(a). Count Four alleges a violation of the Anticybersquatting Consumer Protection Act ("ACPA"). See 15 U.S.C. § 1125(d).[3] Counts Five and Six allege trademark infringement and unfair competition in violation of the common law of Massachusetts. And Count Seven alleges a

---

[2] See 15 U.S.C. § 1114(1).

[3] The ACPA amended the Lanham Act. See Stephens v. Trump Org. LLC, 205 F. Supp. 3d 305, 308 (E.D.N.Y. 2016).

5

violation of the Massachusetts Consumer Protection Act ("MCPA"). See Mass. Gen. Laws ch. 93A, § 2.

1. Lanham Act Infringement and False Designation

Counts One and Three allege, respectively, trademark infringement and false designation of origin, both in violation of the Lanham Act. The legal analysis applicable to these two claims is identical for present purposes. See Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 114 (2d Cir. 2006); Jackpocket, Inc. v. Lottomatrix NY LLC, 645 F. Supp. 3d 185, 228 (S.D.N.Y. 2022).

The Lanham Act imposes liability on any person who, without the consent of the registrant and in connection with the sale, offering for sale, or advertising of services, uses a colorable imitation of a registered mark when such use is likely to confuse consumers. See 15 U.S.C. 1114(1); see also id. § 1125(a) (imposing liability on one who, in connection with commercial services, uses a false designation of origin that is likely to cause consumer confusion). To establish Defendant's liability under these provisions of the Lanham Act, MaidPro must satisfy a two-prong test. First, it must show its mark is entitled to protection, and second, it must show that CMP's use of the mark is likely to confuse consumers as to the origin or sponsorship of CMP's services. See Tiffany

6

(NJ) Inc. v. eBay Inc., 600 F.3d 93, 102 (2d Cir. 2010); Louis Vuitton, 454 F.3d at 115.

MaidPro's mark is entitled to protection, as it is registered (see Compl. ¶¶ 10–12) with the U.S. Patent and Trademark Office and the Commonwealth of Massachusetts. See Farragamo, 2020 WL 774237, at *2. The first prong of the test is satisfied.

The Second Circuit has instructed courts analyzing the second prong of the test to apply

> the non-exclusive multi-factor test developed by Judge Friendly in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir. 1961), and consider: (1) the strength of the mark, (2) the similarity of the two marks, (3) the proximity of the products, (4) actual confusion, (5) the likelihood of plaintiff's bridging the gap, (6) defendant's good faith in adopting its mark, (7) the quality of defendant's products, and (8) the sophistication of the consumers.

Louis Vuitton, 454 F.3d at 116. No one factor is dispositive. See Brennan's, Inc. v. Brennan's Restaurant, L.L.C., 360 F.3d 125, 130 (2d Cir. 2004).

Here, the Court finds upon consideration of the Polaroid factors that the second prong of the test is satisfied. Under the first Polaroid factor, registered marks such as MaidPro's carry a presumption of strength. See Classic Liquor Importers, Ltd. v. Spirits Int'l B.V., 201 F. Supp. 3d 428, 442 (S.D.N.Y. 2016). Further, MaidPro expended substantial resources on the development of goodwill associated with the

7

MAIDPRO mark, which has acquired secondary meaning among consumers. See Mamiya Am. Corp. v. HuaYi Bros., Inc., No. 09 Civ. 5501, 2011 WL 1322383, at *4 (E.D.N.Y. Mar. 11, 2011) (finding first Polaroid factor weighed in plaintiff's favor because its mark was registered and it devoted resources to developing goodwill associated with its products), R. & R. adopted, 2011 WL 1253748 (E.D.N.Y. Mar. 31, 2011).

The second and third Polaroid factors — similarity of the two marks and the proximity of the products — also weigh in favor of MaidPro. MAIDPRO and "City Maid Pro" are nearly identical, and CMP cannot avoid liability merely by adding a descriptive word. See New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 317 (S.D.N.Y. 2010) (holding "NYC Triathlon Club" would likely be confused with "New York City Triathlon"). Further, CMP offers virtually the same services as MaidPro and its authorized franchisees. See id. (stating that the proximity inquiry looks "to the nature of the services").

Finally, the sixth factor — the defendant's good faith — weighs in favor of MaidPro, as well. MaidPro sent three cease-and-desist letters to CMP regarding CMP's unauthorized use of the MAIDPRO mark, yet CMP continued to use the infringing name, giving rise to an inference of bad faith. See Mamiya, 2011 WL 1322383, at *4 (holding in default

8

judgment posture that defendant demonstrated bad faith where it continued to operate its business after plaintiff sent cease-and-desist letters). The Court finds based on these Polaroid factors that CMP's use of the "City Maid Pro" mark is likely to confuse consumers as to the origin or sponsorship of CMP's services. See Classic Liquor Importers, 201 F. Supp. 3d at 441 (stating that the ultimate question concerns consumer confusion and that "evaluation of the Polaroid factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins" (quoting Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 46 (2d Cir. 2000))). Accordingly, MaidPro has established CMP's liability on Counts One and Three.

2. Cybersquatting

Count Four is an ACPA claim under 15 U.S.C. § 1125(d). Under this provision of the Lanham Act, a person is liable to the owner of a distinctive mark if he or she in bad faith uses a domain name that is "identical or confusingly similar to that mark." 15 U.S.C. § 1125(d)(1)(A)(ii)(I). To succeed on a claim under this provision, MaidPro "must demonstrate that (1) its trademark is either distinctive or famous, (2) the domain name is identical or confusingly similar to the trademark, and (3) the defendant acted with a bad-faith intent

9

to profit from the trademark." Ferragamo, 2020 WL 774237, at *3.

MaidPro's allegations, taken as true, establish ACPA liability. The first prong of the test regarding distinctiveness or fame is satisfied because MaidPro has alleged that the MAIDPRO mark has become distinctive due to its efforts to promote the mark and that consumers recognize the mark as signifying an association with the MAIDPRO franchise system. See Ferragamo, 2020 WL 774237, at *3; Experience Hendrix, L.L.C. v. Pitsicalis, No. 17 Civ. 1927, 2020 WL 3564485, at *5 (S.D.N.Y. July 1, 2020) (holding first prong of ACPA test was satisfied where plaintiffs "have become the recognized official source of [certain] goods and services" as a result of their "continuous and substantial use of" their trademarks), R. & R. adopted sub nom. Experience Hendrix, LLC v. Hendrix, 2020 WL 4261818 (S.D.N.Y. July 24, 2020).

The second prong of the test — whether the citymaidpro.com domain name is confusingly similar to the MAIDPRO mark — is also satisfied. This conclusion follows from the above analysis of the Polaroid factors — particularly the second one regarding similarity of the two marks, as the Court's findings with respect to the similarity of the mark MAIDPRO to the name "City Maid Pro" apply with equal force to

10

the similarity of the mark MAIDPRO to the domain name "citymaidpro.com." See Mamiya, 2011 WL 1322383, at *5 (finding defendant liable on ACPA claim in part because the court had "already concluded [by applying Polaroid] that the domain name . . . is 'nearly identical and certainly confusingly similar to' the [trademark]" (quoting NYC Triathlon, 704 F. Supp. 2d at 324)).

Under the third prong of the ACPA test, MaidPro has established that CMP acted in bad faith. This conclusion also follows from the above analysis. See Polaroid, 287 F.2d at 495 (setting forth factors, including factor regarding defendant's good faith). Further, MaidPro alleged that CMP registered the domain name www.citymaidpro.com in willful disregard of MaidPro's rights. See Ferragamo, 2020 WL 774237, at *3 (holding ACPA bad-faith prong was satisfied where plaintiff alleged intent to tarnish and disparage trademarks). Finally, MaidPro's allegations suggest that CMP was not "mak[ing] fair use or noncommercial use of the [mark] on its site; rather, it [was] making commercial use of the mark[]." Mamiya, 2011 WL 1322383, at *5; see 15 U.S.C. § 1125(d)(1)(B)(i) (setting forth nonexclusive list of factors relevant to good faith, including the defendant's "bona fide noncommercial or fair use of the mark in a site

11

accessible under the domain name"). Accordingly, CMP is liable on Count Four.

### 3. State Law Claims

Discussion of the state law claims is somewhat academic, as MaidPro does not seek any relief in connection with those claims. However, for completeness's sake, the Court finds based on its prior analysis that MaidPro has also established CMP's liability on Counts Two, Five, Six, and Seven, as the legal standards applicable to those state law claims are identical as relevant here to corresponding Lanham Act standards discussed above. See People's United Bank v. Peoplesbank, No. 08 Civ. 1858, 2010 WL 2521069, at *9 (D. Conn. June 17, 2010) ("The determination of trademark infringement is essentially identical under federal [law] and [Mass. Gen. Laws ch. 110H, § 12] and does not need to be addressed separately."), aff'd, 401 F. App'x 607 (2d Cir. 2010); L&P Bos. Operating, Inc. v. Window Nation, LLC, 626 F. Supp. 3d 461, 467 (D. Mass. 2022) ("In Massachusetts, the test for common-law trademark infringement is the same as under the Lanham Act." (citation omitted)); Jaho, Inc. v. Adagio Teas, Inc., 501 F. Supp. 3d 7, 9–10 (D. Mass. 2020) (stating that factors mirroring Polaroid factors apply to common law unfair competition claim); N. Light Tech. v. N.

12

Lights Club, 97 F. Supp. 2d 96, 120 (D. Mass. 2000) (applying Lanham Act standard to MCPA claim).

B.   RELIEF

For the violations asserted in Counts Three and Four, MaidPro seeks a permanent injunction and $20,000 in statutory damages. MaidPro also seeks attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) and 28 U.S.C. § 1920 and post-judgment interest under 28 U.S.C. § 1961.

1.   Injunctive Relief

Counts Three and Four are brought pursuant to 15 U.S.C. § 1125(a) and (d), respectively, and the Court is authorized to grant injunctive relief to prevent violations of those provisions. See 15 U.S.C. § 1116(a). MaidPro seeks a permanent injunction restraining CMP from using the MAIDPRO mark, including in connection with a domain name. (See Compl. at 11.) Such an injunction is appropriate where a plaintiff has succeeded on the merits — as is the case here, see supra pt. III.A — and has "demonstrated that (1) it suffered irreparable harm; (2) that remedies available at law are inadequate to compensate for that injury; (3) that the balance of hardships between the parties warrants such a remedy; and (4) that the public interest would not be disserved by the issuance of an

13

injunction." Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd., 626 F. Supp. 3d 635, 653 (S.D.N.Y. 2022).

A permanent injunction is warranted here. Irreparable harm is presumed under these circumstances. See 15 U.S.C. § 1116(a); see also Ferragamo, 2020 WL 774237, at *5 (finding irreparable harm where defendants' "refusal to defend this action creates a threat that they will continue to infringe [plaintiff's] trademarks unless permanently enjoined from doing so" (citation omitted)). Further, remedies available at law are inadequate to compensate MaidPro "[b]ecause the losses of reputation and goodwill and resulting loss of customers are not precisely quantifiable." U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011). The balance of hardships tips in MaidPro's favor, as it expended considerable effort and resources to build goodwill and a favorable reputation among the public. See Ferragamo, 2020 WL 774237, at *5 (holding balance of hardships weighed in plaintiff's favor because it spent considerable resources establishing its reputation). Finally, the public interest would not be disserved by an injunction, as consumers have an interest in "being assured that the mark [they] associate[] with a product is not attached to [services] of unknown origin and quality." Id. (citation omitted). Accordingly, a permanent injunction will issue.

2.  <u>Statutory Damages</u>

Although CMP's default is deemed an admission of the well pleaded allegations in the complaint, it is not deemed an admission of damages. See <u>Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC</u>, 779 F.3d 182, 189 (2d Cir. 2015). The Court has discretion to conduct an evidentiary hearing, but it is not required to do so. <u>See</u> <u>id.</u> Because, as discussed below, statutory damages are available here, the Court finds that an evidentiary hearing is not necessary.

Given CMP's default, MaidPro requests statutory rather than actual damages for the Lanham Act cybersquatting violation asserted in Count Four. In the case of such a violation, the Lanham Act authorizes the Court to award "statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d). Statutory damages are meant to "replicate as nearly as possible the actual harm done to the successful plaintiff without punishing it for lacking information on the issue due to the absent defendant's default." <u>Mamiya</u>, 2011 WL 1322383, at *7.

MaidPro requests $20,000 in statutory damages, arguing that this amount is supported by the decision in <u>Mamiya</u>. In that case, the court awarded statutory damages in the amount

15

of $25,000 on similar facts. See id., at *8 (holding that damages above the statutory minimum award of $1,000 were appropriate despite "lack of evidence of actual harm," given defendant's default and alleged willfulness).

The Court finds the reasoning of Mamiya persuasive, with one caveat. In Mamiya, the court found with respect to a cybersquatting claim involving the plaintiff's PROFOTO mark that the defendant's willfulness made "a ten-fold increase in the minimum award [of $1,000] reasonable." Id. It then found that "a further doubling" was "also appropriate" based on "the fact that the violation involved two marks." Id. Here, MaidPro only alleges a cybersquatting violation involving one mark. Therefore, the Court finds that a "further doubling," id., is unnecessary and that an award to MaidPro of $10,000 — rather than the full request of $20,000 — in statutory damages is reasonable.[4]

---

[4] As previously discussed, MaidPro possesses two federal copyright registrations in connection with the MAIDPRO mark — apparently one for the word MAIDPRO and one for the MAIDPRO logo. To the extent that the Mamiya decision held that the two marks at issue there were merely the word PROFOTO and the design of the PROFOTO logo, see 2011 WL 1322383, at *1, the Court declines to follow it. As noted above, there is no relevant allegation here — and certainly none with respect to the cybersquatting claim, which is the sole basis for statutory damages — implicating the MAIDPRO logo.

3. <u>Attorneys' Fees, Costs, and Post-Judgment Interest</u>

MaidPro is entitled to $619.50 in costs arising (<u>see</u> Dkt. No. 15 ¶ 22) from a $402 filing fee and $217.50 spent on service upon CMP of the complaint and related papers. <u>See</u> Fed. R. Civ. P. 54(d)(1); 28 U.S.C. § 1920(1); <u>Bhungalia Family, LLC v. Agarwal</u>, 317 F. Supp. 3d 727, 745 (S.D.N.Y 2018) (costs for process servers are recoverable). MaidPro is also entitled to post-judgment interest. <u>See</u> 28 U.S.C. § 1961(a).

The Court declines to award attorneys' fees. As an initial matter, MaidPro did not support its request for attorneys' fees with contemporaneous time records for each attorney showing the number of hours expended *and* the nature of the work completed. <u>See</u> <u>Pitsicalis</u>, 2020 WL 3564485, at *16 (stating that attorneys must document requests for fees with contemporaneous time records specifying, for each attorney, the hours expended and the nature of the work done).

Moreover, the Court finds in any event that attorneys' fees are not warranted under 15 U.S.C. § 1117(a), which allows the Court to impose such fees only "in exceptional cases" involving certain Lanham Act claims. MaidPro claims this case is exceptional because CMP failed to stop using the name "City Maid Pro" after MaidPro sent three cease-and-desist letters,

17

but that argument is essentially a contention that CMP's default renders the case exceptional — a proposition rejected by courts in this Circuit. See Sirius XM Radio Inc. v. Aura Multimedia Corp., No. 21 Civ. 6963, 2024 WL 1756854, at *6-7 (S.D.N.Y. Apr. 6, 2024) (collecting cases), R. & R. adopted, 2024 WL 1739905 (S.D.N.Y. Apr. 23, 2024). And MaidPro "do[es] not argue, nor can the Court ascertain, any other basis on which this case stands out from others in regard to its frivolousness or objective reasonableness." Id., at *7.

C.   COMPLIANCE WITH DEFAULT JUDGMENT PROCEDURE

This Court's Local Civil Rule 55.2(b) requires a party moving for a default judgment to mail its motion papers to the opposing party *and* to file "[p]roof of such mailing" and, if the mail is returned, "a supplemental affidavit . . . setting forth that fact, together with the reason provided for return, if any." MaidPro has not complied with this rule; its papers in support of the Motion state only that "a service copy" "*will* [be] mail[ed] out." (Mot. at 7.) Accordingly, MaidPro is directed to comply with Local Civil Rule 55.2(b) and to file proof of such compliance on the docket, upon which time MaidPro may move by letter motion for the relief to which it is entitled under this Decision and Order.

## IV. <u>ORDER</u>

For the foregoing reasons, it is hereby

**ORDERED** that plaintiff MaidPro Franchise, LLC ("MaidPro") is hereby directed to comply with this Court's Local Civil Rule 55.2(b) as described in this Decision and Order; and it is further

**ORDERED** that after such compliance, MaidPro shall move by letter motion for the relief to which it is entitled under this Decision and Order; and it is further

**ORDERED** that the Clerk of Court is respectfully directed to terminate any motion pending at Docket No. 14.

**SO ORDERED.**

Dated:    27 June 2024
          New York, New York

_____
Victor Marrero
U.S.D.J.